UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Said Armutcuoglu,

           Plaintiff,

—v—

Ian Lev,

           Defendant.

17-cv-0627 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

In this case arising out of alleged civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and related state-law claims, the Defendant has moved both to dismiss the complaint and for the Court to impose sanctions against the Plaintiff under Federal Rule of Civil Procedure 11. For the reasons explained below, the motion to dismiss is granted in part and denied in part, and the motion for sanctions is denied.

I.     **Background**

The Court assumes the parties' familiarity with the facts of this case, which arises out of Plaintiff Said Armutcuoglu's investments in a business, Carefree Financial LLC ("Carefree"), a startup business allegedly run by the Defendant Ian Lev and his business partner Josh Johnson. Second Amended Complaint ("SAC"), Dkt. No. 30, ¶ 1. The Plaintiff alleges that from May 2010 through early 2012, the Defendant made fraudulent misrepresentations and sent fraudulent promotional material about Carefree to the Plaintiff to induce him to invest in Carefree. SAC ¶¶ 1-4. The Plaintiff further alleges that in 2011, the Defendant and Johnson misappropriated funds that the Plaintiff and other noteholders had invested in Carefree by investing those funds in other ventures or using that money for personal expenses. SAC ¶ 5. Based on the Defendant's

1

alleged misrepresentations, the Plaintiff invested $412,984 in promissory notes issued by Carefree. SAC ¶ 6.

In February 2012, the Defendant reported to the Plaintiff and other noteholders "that Carefree had suffered significant losses and told noteholders that the company had engaged an attorney and a forensic accountant to assess and recoup those losses." SAC ¶ 8. According to the Plaintiff, the Defendant "minimized and whitewashed evidence" of his participation in the fraud. SAC ¶ 10. The Defendant and his business partner subsequently sold Carefree to RPF Holdings, Inc. SAC ¶ 11. According to the Plaintiff, the Defendant made fraudulent representations to RPF Holdings to induce it to purchase Carefree. SAC ¶¶ 11-13.

The Plaintiff filed a complaint in this action on January 26, 2017 against the Defendant, Josh Johnson, and the Defendant's father, Bruce Lev. Complaint, Dkt. No. 1. Josh Johnson and Bruce Lev were subsequently dismissed from the case. Dkt. Nos. 47, 53. On May 23, 2017, the Plaintiff filed a Second Amended Complaint alleging that the Defendant (1) committed civil RICO violations, (2) engaged in a civil RICO conspiracy, (3) committed fraud, and (4) made negligent misrepresentations. *See generally* SAC. On June 28, 2017, the Defendant filed both a motion to dismiss the Second Amended Complaint, Dkt. No. 33, and a motion for the imposition of sanctions against the Plaintiff, Dkt. No. 34. The Court now disposes of these motions.

## II. The Motion to Dismiss Is Granted in Part and Denied in Part

The Defendant first moves to dismiss the Second Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion to dismiss is granted on Counts I and II and denied on Counts III and IV.

### A. Legal Standard

When considering a motion to dismiss for failure to state a claim, courts "construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true." *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint's factual allegations must be sufficient to "nudge[]" the plaintiff's claims "from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "In addition to the allegations in the complaint itself, a court may consider documents attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as well as any judicially noticeable matters." *ACE Sec. Corp. Home Equity Loan Tr. v. DB Structured Prods.*, 5 F. Supp. 3d 543, 551 (S.D.N.Y. 2014).

B. **Discussion**

1. **Plaintiff's RICO Claim Fails as a Matter of Law**

The Plaintiff first alleges that the Defendant violated the civil RICO statute, 18 U.S.C. § 1962(c), by engaging in a criminal enterprise that sought to "defraud[] Plaintiff and other noteholders, misappropriat[e] investor funds, and defraud[] RPF, the purchaser of Carefree." SAC ¶ 63. This claim fails as a matter of law.

In order to state a claim under 18 U.S.C. § 1962(c), a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). A "pattern of racketeering

activity," as defined by Congress, "requires at least two acts of racketeering activity" that occur within ten years of each other. 18 U.S.C. § 1961(5). However, "while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a 'pattern.'" *Sedima*, 473 U.S. at 496 n.14. When considering whether a plaintiff has alleged at least two acts of racketeering activity, "courts must take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

In order to create a pattern, the predicate acts must exhibit both relatedness and continuity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (quoting Dangerous Special Offender Sentencing Act, Pub. L. No. 91-452, sec. 1001(a), § 3575(e), 84 Stat. 948, 949 (1970), *repealed by* Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987). The Second Circuit has "further developed" the test of relatedness, requiring that predicate acts "must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Daidone*, 471 F.3d 371, 375 (2d Cir. 2006) (quoting *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992)).

Predicate acts may exhibit either closed-ended continuity or open-ended continuity. *H.J. Inc.*, 492 U.S. at 241. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* "[A] plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future

4

criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a substantial period of time')." *Schlaifer Nance*, 119 F.3d at 97 (quoting *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). The Second Circuit "has held that a matter of years is sufficient to show a 'substantial period of time' for closed-ended continuity." *Id.*; *see also Watral v. Silvernails Farm LLC*, 51 F. App'x 62, 64 (2d Cir. 2002) ("[S]ince the Supreme Court decided *H.J. Inc.*, we generally have held that at a minimum, the plaintiff must show that the predicate acts extended over at least two years to establish closed-ended continuity."). "Although closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). "In essence, the overall pattern requirement, of which relatedness is one component, is a bulwark against 'the application of RICO to the perpetrators of isolated or sporadic criminal acts.'" *Daidone*, 471 F.3d at 375 (quoting *Minicone*, 960 F.2d at 1106).

The Plaintiff has not sufficiently alleged that the Defendant engaged in a pattern of racketeering activity and, as a result, his civil RICO claims must be dismissed. The Second Amended Complaint identifies nine alleged predicate acts that constituted violations of federal mail and wire fraud statutes, SAC ¶¶ 64-65, 67, and three acts that allegedly constituted engaging in monetary transactions in property derived from unlawful activity, SAC ¶ 66. Following the Second Circuit's direction in *Schlaifer Nance* that courts must avoid "artificially fragmenting a singular act into multiple acts," 119 F.3d at 98, however, the Court finds that the Second Amended Complaint alleges four predicate acts. First, between May 2010 and March 2011, the Defendant allegedly committed mail and wire fraud to induce the Plaintiff and others

to invest in Carefree and keep their money invested. SAC ¶ 64; *see also Schlaifer Nance*, 119 F.3d at 97-98 (holding that multiple allegedly fraudulent activities were "subparts" of "one purportedly fraudulent act: the negotiation of the [licensing] Agreement"). Second, in 2011, the Defendant withdrew money from Carefree to pay for personal expenses. SAC ¶ 66. Third, in February 2012, the Defendant sent an allegedly fraudulent email to Carefree's noteholders to disclose Carefree's losses and cover up his involvement. SAC ¶ 64. Fourth, in June 2012, the Defendant allegedly committed mail and wire fraud to induce RPF Holdings to purchase Carefree. SAC ¶ 67.

The Court concludes that the Plaintiff has not sufficiently alleged that Defendant's purported fraud on RPF Holdings is related to the other alleged predicate acts within the meaning of the RICO statute. In this case, "very little links" the alleged RPF fraud to the other predicate acts because "the purpose and victims of the two offenses are distinct." *Reich v. Lopez*, No. 13-cv-5307 (JPO), 2015 WL 1632332, at *3 (S.D.N.Y. Apr. 13, 2015). The first three alleged predicate acts were perpetrated against Carefree's investors and sought to enable the Defendant and others to use Carefree as a façade through which they could funnel money for their personal gain. In contrast, the alleged fraud against RPF Holdings sought to divest the Defendant and others of Carefree by selling it to another corporation. These two purposes are, if anything, "at odds," and they therefore cannot form related acts. *Schlaifer Nance*, 119 F.3d at 97 ("The goal of Scheme B was to induce [the plaintiff] into the contract, while the goal of the other schemes was to force [the plaintiff] out of the agreement. These inconsistent allegations of fraud cannot be the basis for a RICO claim."). As a result, the Court will consider only the other three predicate acts.

Having determined that the June 2012 alleged fraud cannot serve as a predicate act, the Court further concludes that the remaining predicate acts are not sufficiently continuous to support a RICO claim. First, the predicate acts cannot exhibit open-ended continuity because the Defendant sold Carefree to RPF Holdings in June 2012, thereby eliminating his ability to use it to defraud Carefree's investors. As a result, there is no continuing "threat of repetition" of predicate acts moving forward. *See H.J. Inc.*, 492 U.S. at 241. Second, the Plaintiff has not alleged facts that would support a finding that the predicate acts exhibited closed-ended continuity. The three predicate acts span from May 2010 to February 2012 – two months short of the minimum amount of time the Second Circuit has generally accepted as a "substantial period." *Watral*, 51 F. App'x at 64. Moreover, none of the other factors that the Court may consider to establish closed-ended continuity weigh in favor of finding continuity here. *See Cofacredit, S.A.*, 187 F.3d at 242 (listing number and variety of predicate acts, number of participants and victims, and presence of separate schemes as factors). The Second Amended Complaint only specifically alleges fraudulent acts against one victim (the Plaintiff),[1] and there are only three predicate acts relating to a single scheme alleged. As a result, the Court concludes that as a matter of law, these predicate acts do not exhibit closed-ended continuity.

The Court thus holds that the Second Amended Complaint fails to state a claim for civil RICO violations because, taking the facts in the light most favorable to the Plaintiff, the Defendant's actions did not constitute a "pattern of racketeering activity." 18 U.S.C. § 1962(c). Rather, the Plaintiff has alleged that the Defendant and others were "the perpetrators of isolated or sporadic criminal acts": this is the very type of claim that RICO's pattern requirement was

---

[1] While the Second Amended Complaint references "other noteholders" as victims of the Defendant's alleged racketeering activities, there is no specific information concerning the number or identities of noteholders, nor does the Plaintiff allege with specificity that predicate acts were perpetrated against such other noteholders.

7

erected as a "bulwark" to prevent. *Daidone*, 471 F.3d at 375. As a result, the civil RICO claim of the Second Amended Complaint is dismissed. Because the Court concludes that the Plaintiff's claim fails to allege this element of a civil RICO violation, the Court need not reach the Defendant's other arguments in favor of dismissing Count I. *See* Memo. in Support, Dkt. No. 33-16, at 7 (arguing that RICO claims are time barred); *id.* at 13-14 (arguing that Plaintiff failed to sufficiently allege that Defendant conducted the affairs of the enterprise).

### 2. Plaintiff's RICO Conspiracy Claim Fails as a Matter of Law

The Plaintiff next alleges that the Defendant engaged in a civil RICO conspiracy in violation of 18 U.S.C. § 1962(d) by being a "member[] of" and "associated with[] the Carefree Enterprise," which engaged in a pattern of racketeering. SAC ¶ 70. This claim also fails as a matter of law. A plaintiff cannot successfully plead a RICO conspiracy where he has failed to state a claim for a substantive violation of the civil RICO statute. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998). Because the Second Amended Complaint did not successfully state a claim under 18 U.S.C. § 1962(c), the RICO conspiracy claim must also be dismissed.

### 3. Plaintiff Has Sufficiently Alleged Fraud under New York Law

The Plaintiff next alleges that the Defendant fraudulently induced him to invest in Carefree, keep his money in, and forestall repayment of his investment in Carefree in violation of New York law. SAC ¶¶ 73-77. The Court finds that the Second Amended Complaint plausibly alleges a state-law claim for fraud, and the motion to dismiss is therefore denied as to this claim.

"Under New York law, to plead fraud, a plaintiff must allege: '1) a material false representation or omission of an existing fact, 2) made with knowledge of its falsity, 3) with an intent to defraud, and 4) reasonable reliance, 5) that damages plaintiff.'" *JHW Greentree*

8

*Capital, L.P. v. Whittier Tr. Co.*, No. 05-cv-2985 (HB), 2005 WL 3008452, at *9 (S.D.N.Y. Nov. 10, 2005) (quoting *Schlaifer Nance & Co. v Estate of Andy Warhol*, 927 F. Supp. 650, 660 (S.D.N.Y. 1996)). When a complaint alleges fraud, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). In particular, the complaint "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

The Defendant first argues that the Plaintiff has failed to allege fraud with particularity under Rule 9(b). Memo. in Support at 21-22. Not so. The Plaintiff has sufficiently alleged several fraudulent misrepresentations and omissions by the Defendant, including knowingly overstating the value of Carefree in an executive summary without disclosing significant existing debt, SAC ¶¶ 27-28, continuously representing to noteholders that Carefree had adequate credit insurance and only lent to companies insured through Carefree's credit insurance despite knowing that this was inaccurate, SAC ¶¶ 29, 31-33, 44-45, and representing that the Plaintiff's money would be invested in Carefree when it was repeatedly invested in other ventures or withdrawn by the Defendant for personal uses, SAC ¶¶ 1, 4, 5, 51. These allegations, along with others made in the Second Amended Complaint, are sufficiently particular to survive at the motion to dismiss stage.

The Defendant next argues that the Plaintiff's claim for fraud should be dismissed to the extent the circumstances of the alleged fraud overlap with specific provisions of the Note Purchase Agreement the two negotiated. Memo. in Support at 23-24. It is true that "[u]nder New York law a fraud claim is not sustainable if it merely asserts a breach of contract." *Best W.*

*Int'l, Inc. v. CSI Int'l Corp.*, No. 94-cv-0360 (LMM), 1994 WL 465905, at *5 (S.D.N.Y. Aug. 23, 1994). In order to properly state a claim for fraud, as independent from a claim for breach of contract, a plaintiff must: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted). In order to constitute a collateral or extraneous fraudulent misrepresentation, "the statement must be a misrepresentation regarding present facts, as opposed to one reflecting an intent to perform [in accordance with the contract] in the future." *IKB Int'l S.A. v. Bank of Am.*, No. 12-cv-4036 (LAK), 2014 WL 1377801, at *14 (S.D.N.Y. Mar. 31, 2014) (quoting *Solutia Inc. v. FMC Corp.*, 385 F. Supp. 2d 324, 342 (S.D.N.Y. 2005)).

The Second Amended Complaint sufficiently alleges that the Defendant made fraudulent misrepresentations collateral or extraneous to the contract to support a fraud claim. Among these alleged collateral fraudulent misrepresentations are the Defendant's repeated misstatements about the financial stability and internal controls of Carefree that were allegedly made to induce the Plaintiff to both invest further in Carefree and forestall repayment of $100,000 which he was owed. SAC ¶¶ 2, 26, 28, 30, 40-41, 43-44, 47. The Plaintiff has also alleged that the Defendant repeatedly made representations that he was "managing the company and aware of its affairs" despite having no knowledge of its operations. SAC ¶ 37. Each of these representations could be deemed a statement of the present rather than a promise to follow the terms of the Note Agreement in the future. In addition, the Plaintiff alleges that the Defendant continued to make misrepresentations about his intention to follow provisions of the Note Agreement including maintaining credit insurance, SAC ¶¶ 29, 31-33, 38, maintaining certain levels of capitalization,

SAC ¶ 34, and not incurring any debt senior to the Plaintiff's debt absent written notice, SAC ¶¶ 39-41. Drawing all inferences in the Plaintiff's favor, as the Court must when considering a motion to dismiss, these alleged misrepresentations could be construed as either expressly stating that the Defendant had not already breached the terms of the Note Agreement or containing a material omission of the fact that the Defendant was not in compliance with the terms of the Note Agreement at the time he was promising to follow them in the future. As a result, the Court concludes that the Second Amended Complaint alleges misrepresentations extraneous or collateral to the Note Agreement that survive the motion to dismiss.

For the reasons stated above, the Court finds that the Plaintiff has plausibly alleged a state claim for fraud. The motion to dismiss is therefore denied as to this claim.

### 4. Plaintiff Has Sufficiently Alleged Negligent Misrepresentation Under New York Law

The Plaintiff's final claim alleges that the Defendant made negligent misrepresentations regarding the Plaintiff's investment in Carefree. SAC ¶¶ 78-84. The only argument that the Defendant makes regarding this claim is that it is time-barred because negligent misrepresentation has a three-year statute of limitations under New York law and "in a light most favorable to Plaintiff, Plaintiff's cause of action accrued in September 2013." Memo. in Support at 20; *see also* N.Y. C.P.L.R. 214. However, "[i]n New York, a claim for negligent misrepresentation based on the same facts as a claim for fraud is governed by the six-year statute of limitation for fraud under C.P.L.R. § 213(8)." *Von Hoffmann v. Prudential Ins. Co.*, 202 F. Supp. 2d 252, 263 (S.D.N.Y. 2002) (collecting cases). As a result, viewing the facts in the light most favorable to the Plaintiff, the cause of action accrued in September 2013, and the claim was timely when made in the January 2016 complaint. The motion to dismiss is therefore denied as to this claim.

11

## III. The Motion for Sanctions Is Denied

The Defendant next moves the Court to impose sanctions against the Plaintiff under Federal Rule of Civil Procedure 11(b) for bringing claims alleging the Defendant committed civil RICO violations and engaged in a RICO conspiracy. For the reasons explained below, the motion for sanctions is denied.

### A. Legal Standard

Under Federal Rule of Civil Procedure 11(b), an attorney who presents a pleading to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading (1) "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" (2) contains "claims, defenses, and other legal contentions" that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and (3) contains factual contentions that "have evidentiary support." Fed. R. Civ. Proc. 11(b)(1)-(3). Rule 11 "imposes an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before actually signing it." *Hoatson v. N.Y. Archdiocese*, No. 05-cv-10467 (PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007) (quoting *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990)). "[S]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Constr. Corp. v. New York City*, 762 F.2d 243, 254 (2d Cir. 1985) (footnote omitted). "In determining whether an argument is merely losing or whether it is

12

'merely losing and sanctionable,' a court must resolve all doubts in favor of the signer." *Lipiro v. Remee Prods.*, 75 F. Supp. 2d 174, 178 (S.D.N.Y. 1999) (quoting *Ametex Fabrics, Inc. v. Just in Materials, Inc.*, No. 94-cv-5226 (DLC), 1996 WL 428391, at *2 (S.D.N.Y. July 31, 1996)).

## B. Discussion

The Defendant argues that Rule 11 sanctions should be imposed because the RICO claims in the Second Amended Complaint are "time-barred and manifestly frivolous." Memo. in Support of Sanctions, Dkt. No. 34-16, at 7. The Court finds that neither argument warrants the imposition of sanctions.

First, although the Court has not reached the time-bar basis for the motion to dismiss, the Court does find that there exists a reasonable basis for the Plaintiff to argue that his civil RICO claims are not time-barred based on equitable tolling. Specifically, the Plaintiff argues that the Defendant fraudulently concealed his alleged improper actions at Carefree and that, even after the Defendant informed investors in March 2012 that Carefree was in financial trouble, the Defendant concealed the nature of the fraud and the Defendant's own allegedly fraudulent involvement from the Plaintiff and other noteholders. SAC ¶¶ 9-11, 41, 46-48, 51-53; Memo. in Opp. to Sanctions, Dkt. No. 39, at 14-16. As a result, the Plaintiff has a non-frivolous argument that he was not put on inquiry notice about the Defendant's alleged fraudulent activities and, in fact, that the Defendant actively tried to eradicate any suspicion that he had acted improperly by blaming another manager for any improper activities and vowing to take legal action against that manager. SAC ¶ 9; Memo in Opp. to Sanctions at 16-17. The Plaintiff thus had a reasonable basis to argue that his civil RICO claims did not accrue until "mid-to-late 2013" when an RPF Holding executive disclosed the nature of the Defendant's alleged fraud. Memo. in Opp. to

Sanctions at 17. Defendant's argument that the civil RICO claims are time-barred thus does not form a basis to award Rule 11 sanctions.

Second, while the Court concludes that the Second Amended Complaint fails to state a claim under the civil RICO statute on which relief can be granted, *see supra*, the Court concludes that the Plaintiff had a reasonable – although incorrect – basis to assert that the Defendant's alleged actions constituted a pattern of racketeering activity under 18 U.S.C. § 1962(c). That is, a competent attorney could have decided that there was a reasonable basis to bring a civil RICO claim in this action and allege that all four of the purported predicate acts were sufficiently related to constitute a pattern of racketeering that spanned more than two years. Although meritless, it was not frivolous. Similarly, the Plaintiff's claims regarding the other elements of a civil RICO violation and RICO conspiracy (which the Court did not need to reach in deciding the motion to dismiss) are sufficiently supported by case law that a competent lawyer would conclude she had a reasonable basis to bring such claims. *See Eastway Constr. Corp.*, 762 F.2d at 254.

Because the Plaintiff's civil RICO and RICO conspiracy claims had a reasonable basis in law, they were not frivolous and thus do not warrant the imposition of Rule 11 sanctions. The motion for sanctions is denied.

## IV. Conclusion

The motion to dismiss is granted as to Counts I and II of the Second Amended Complaint alleging civil RICO violations and a civil RICO conspiracy. The motion to dismiss is denied as to Counts III and IV of the Second Amended Complaint alleging violations of state law. This resolves docket number 33.

The motion for sanctions is denied. This resolves docket number 34.

The parties are ordered to confer and submit a new proposed Case Management Plan within fourteen days of the issuance of this Memorandum Opinion and Order.

SO ORDERED.

Dated: March 23, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge